E-FILED
Tuesday, 21 April, 2026  02:49:37 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JOHN CRAMPTON, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-04156-SLD-RLH |
| | ) | |
| SAMUEL LITTLE, TOM WILEY, and | ) | |
| ERIC DUSENBERRY, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

In this case, Plaintiff John Crampton, III alleges that Defendants Samuel Little, Tom

Wiley, and Eric Dusenberry, police officers employed by the Village of Colona, Illinois ("the

Officers"), violated his constitutional rights by unlawfully arresting him and by using excessive

force during the arrest.  Before the Court is the Officers' motion for summary judgment, ECF

No. 20.  For the reasons that follow, the motion is GRANTED IN PART and DENIED IN

PART.

**BACKGROUND[1]**

On June 21, 2023, Crampton was patronizing Grease Monkeys Sports Bar and Grill

("Grease Monkeys") in Colona, Illinois.  Over the course of the evening, Crampton became

intoxicated to the point that he could not safely drive.  When he was leaving Grease Monkeys,

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nomovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  The facts related here are, unless otherwise noted, taken from the Officers' statement of undisputed material facts, Mot. Summ. J. 4–10; Crampton's response thereto and statement of additional material facts, Resp. Mot. Summ. J. 3–7, ECF No. 21; the Officers' reply to Crampton's additional material facts, Reply Supp. Mot. Summ. J. 1–8, ECF No. 22; and from the exhibits to the filings.  Where the parties disagree about the facts, the Court views the evidence in the light most favorable to Crampton and draws all reasonable inferences in his favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

another individual—Angela Crider—called to report that an intoxicated male was attempting to leave in a red Ford F-350.[2]  Little and Dusenberry were dispatched to Grease Monkeys to respond to the call, where they observed a red Ford F-350 with two male occupants.  After approaching the vehicle, the driver identified himself as Steven Garland.  Wiley then arrived in his squad car.

At this point, the stories of Crampton and the Officers dramatically diverge.  The Officers submit affidavits stating that Crampton aggressively refused to cooperate with their instructions.  *See generally* Aff. Little, Mot. Summ. J. Ex. 1, ECF No. 20-1; Aff. Dusenberry, Mot. Summ. J. Ex. 2, ECF No. 20-2; Aff. Wiley, Mot. Summ. J. Ex. 3, ECF No. 20-3.  They also provide a police report that tends to support the Officers' affidavits.  *See generally* Police Report, Mot. Summ. J. Ex. 4, ECF No. 20-4.  According to the Officers, Garland stated that he didn't know the name of the man in the passenger seat but that Garland volunteered to drive him home since he was intoxicated.  The Officers then began questioning the passenger, who responded with profanities.  The passenger also manifested clear signs of intoxication, including bloodshot eyes and an odor of alcohol on his breath.  After being advised that the Officers needed to know his name so they could complete the call and let the men go, the passenger identified himself as Crampton.  The Officers then ran Crampton's name and date of birth, at which point they were advised that Crampton had a concealed carry license.  The Officers attempted to speak further with Crampton, but he reached to roll up the window and shut the door, which struck Dusenberry as it was closing.  In response, the Officers reopened the passenger door and instructed Crampton

---

[2] Crampton moves to strike Crider's statements, as well as information conveyed to the Officers regarding dispatch activity and Crampton's concealed carry license, because they are inadmissible hearsay.  *See* Resp. Mot. Summ. J. 3, 5.  The statements are not hearsay because they are not intended "to prove the truth of the matter asserted in the statement[s]."  Fed. R. Evid. 801(c)(2).  Instead, the statements are relevant because of their impact on the Officers. The fact that Crider reported what she did, the fact of the Officer's dispatch, and the fact that the Officers were told that Crampton had a concealed carry license goes to the Officer's motivations and state of mind regardless of whether any of the information conveyed was accurate.

to exit the truck.  He responded with further profanities and refused to exit.  Because of this, Dusenberry reached into the truck to unbuckle Crampton's seatbelt.  After Crampton refused a further order to exit the truck, Little and Dusenberry took hold of his arms and removed him from the vehicle.  Crampton resisted by bracing himself and gripping the door handle.  When the Officers succeeded in removing Crampton from the truck, they placed him in handcuffs.  At no point did Crampton advise the Officers of any injury or other medical issue requiring him to be handcuffed in front, nor did he complain of any discomfort from the handcuffs.  The Officers then placed Crampton in Wiley's patrol car and transported him to the Colona Police Department, where he was booked and processed for resisting and obstructing a peace officer.

Crampton submits affidavits from himself and two eyewitnesses that tell a very different story.  *See generally* Aff. Crampton, Resp. Mot. Summ. J. Ex. A, ECF No. 21-1; Aff. Steven Garland, Resp. Mot. Summ. J. Ex. B, ECF No. 21-2; Aff. Caily Scott, Resp. Mot. Summ. J. Ex. C, ECF No. 21-3.  Crampton states that he never attempted to drive his truck away from Grease Monkeys.  When the police approached the truck, he never swore at them and instead responded to their questioning by providing his name and address.  After providing this information, thinking he could leave, he closed the passenger door, which came into contact with Dusenberry while it was closing.  At this point, Dusenberry yanked open the door and unbuckled Crampton's seatbelt.  The Officers never instructed Crampton to exit the vehicle.  Instead, Dusenberry and Little grabbed his arms and forcibly pulled him out of the vehicle and pinned him against the side of the truck.  Crampton did not resist the officers, nor could he have since they had grabbed both of his arms.  He then informed the Officers that he had two bad shoulders and requested that they handcuff him in front if they were going to handcuff him.  The Officers ignored his requests and yanked his arms behind his back and raised them up, causing Crampton to yell out in pain.

3

As a result of this encounter, Crampton required medical treatment for injuries to his wrists, elbows, arms, and shoulders.

Later that summer, Crampton was charged in Illinois state court with resisting a peace officer, a Class A Misdemeanor. The charges were later dismissed upon a motion by the state's attorney because there was no underlying offense for which Crampton was initially subject to arrest.

On August 21, 2024, Crampton filed a two-count complaint alleging that (1) the Officers violated his Fourth Amendment rights and (2) Dusenberry and Little committed battery under Illinois law. *See generally* Compl., ECF No. 1. After Defendants filed a motion to dismiss, ECF No. 9, the Court dismissed Crampton's battery count because it was barred by the one-year statute of limitations set forth in 745 ILCS 10/8-101(a). *See* Dec. 10, 2024 Order 5, ECF No. 10. Upon completing discovery, the Officers moved for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a), arguing that they did not violate Crampton's Fourth Amendment rights and, in any case, are entitled to qualified immunity. *See* Mot. Summ. J. 3. The Officers alternatively seek summary judgment on grounds that Crampton cannot show that their actions caused his alleged injuries. *Id.* Crampton opposes the motion in its entirety. *See* Resp. Mot. Summ. J., ECF No. 21.

**DISCUSSION**

## I.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There is a genuine issue for trial if "a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quotation marks omitted).  The court must "resist the temptation to act as jurors when considering summary judgment motions." *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012).  Instead, in determining whether the movant is entitled to judgment as a matter of law, the court must "construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

## II.    Analysis

Crampton claims that the Officers violated his Fourth Amendment[3] rights by subjecting him to an unreasonable seizure and by using excessive force during the seizure.  *See* Compl. 1–4. He seeks recovery under 42 U.S.C. § 1983, which provides a private right of action for victims of Constitutional violations by state officials acting under the color of state law.  The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  Of course, not all interactions between law enforcement and private citizens constitute unreasonable seizures.  *United States v. Odum*, 72 F.3d 1279, 1283 (7th Cir. 1995).  Instead, there are three categories of encounters with law enforcement, each with their own Fourth Amendment implications:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which is limited to a brief, non-intrusive detention.  This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime.  The third category involves no restraint on the citizen's liberty, and is characterized by an officer

---

[3] The Fourth Amendment has been incorporated against the states through the Fourteenth Amendment Due Process clause.  *See Wolf v. Colorado*, 338 U.S. 25, 27–28 (1949), *overruled in part on other grounds by*, *Mapp v. Ohio*, 367 U.S. 643 (1961).

> seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment.

*United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir. 1990) (citations omitted). The Fourth Amendment's prohibition on unreasonable seizures also protects against the use of excessive force during an arrest or investigatory stop. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

In this case, the Officers concede that at different points during Crampton's encounter with the police, there was both an arrest and an investigatory stop, or "Terry stop," *see generally Terry v. Ohio*, 392 U.S. 1 (1968); Mot. Summ. J. 12–17 (acknowledging that both an arrest and Terry stop occurred). The Court first addresses whether the arrest was justified and then proceeds to consider whether the officers used excessive force in effectuating it.

### a.  False Arrest

The police initiated an investigatory stop when they approached the red F-350 and began questioning the occupants. *See* Police Report 3; Aff. Crampton 2; *Hall v. City of Chicago*, 953 F.3d 945, 948 (7th Cir. 2020) ("[O]fficers may execute a name check on an individual incidental to a proper stop under *Terry v. Ohio*, as long as the resulting delay is reasonable." (internal citations omitted)). Crampton does not contest that this initial stop was justified. *See* Resp. Mot. Summ. J. 11 (arguing only that the justification ended "once [the Officers] learned that Crampton was not actively trying to drive a truck and had given his name and address"). He instead argues that the Officers' decision to remove him from the truck after that initial conversation was not supported by either reasonable suspicion or probable cause. *See id.* at 10–11. The Court need not decide whether probable cause or reasonable suspicion existed because, even assuming the more stringent probable cause standard applies, the Officers are entitled to qualified immunity with respect to Crampton's false arrest claim.

6

"Probable cause for an arrest exists if an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003). "[A]lthough it requires something more than a hunch, probable cause does not require a finding that it was more likely than not that the arrestee was engaged in criminal activity—the officer's belief that the arrestee was committing a crime need only be reasonable." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013). Probable cause is ultimately "a fluid concept that is based on the totality of the circumstances." *Moorer v. City of Chicago*, 92 F.4th 715, 720 (7th Cir. 2024). As a result, it is "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Officers argue that there was probable cause to arrest Crampton for two distinct criminal offenses: resisting or obstructing a peace officer, 720 ILCS 5/31-1(a), and battery, 720 ILCS 5/12-3.[4] Mot. Summ. J. 14–17, 29. Crampton claims that there was no probable cause to arrest him under either of these statutes because (1) there can be no violation of 720 ILCS 5/31-1(a) if there is no underlying offense, (2) he was not actually arrested for battery, and (3) he never heard an order to vacate the vehicle, so he never disobeyed an order from the police. Resp. Mot. Summ. J. 10.

The Officers assert that, in any event, they are entitled to qualified immunity. Mot. Summ. J. 28–30. Crampton does not respond to this argument. *See generally* Resp. Mot. Summ. J. Under the doctrine of qualified immunity, government officials are protected from liability in

---

[4] The Officers claim there was probable cause to arrest Crampton for the battery of a peace officer under 720 ILCS 5/12-4(a)(3). Mot. Summ. J. 29. They presumably intend to refer to 720 ILCS 5/12-3.05(a)(3) since section 5/12-4 was renumbered as section 5/12-3.05 in 2011. *See* P.A. 96-1551, Art. 1, § 5, 96th Gen. Assemb. (Ill. 2010). This statute is for "aggravated battery" and includes the lesser offense of battery, which is outlined in 720 ILCS 5/12-3. Because the Officers at several points reference probable cause for "battery" and not only "aggravated battery," *see, e.g.*, Mot. Summ. J. 16, the Court also considers the battery claim under 720 ILCS 5/12-3. As battery is a lesser included offense of aggravated battery, *see* 720 ILCS 5/12-3.05, and because probable cause is only required as to one offense, *see Abbott*, 705 F.3d at 715, the Court only finds it necessary to address section 5/12-3.

suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine "gives public officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Abbott*, 705 F.3d at 713 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Once the defense is raised, the plaintiff bears the burden of defeating it by showing that (1) the defendants violated a constitutional right and (2) the constitutional right was clearly established at the time of the violation." *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023). If it is evident that a right was not clearly established, courts may grant immunity on that basis without determining whether there was a violation in the first place. *Abbott*, 705 F.3d at 713. The plaintiff bears the burden of establishing that a right is clearly established "either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Id.* at 723–24. The case must be closely analogous "in a particularized sense" stemming from specific analogous facts rather than "in an abstract or general sense." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (quotation marks omitted). This means Crampton cannot rest on general legal rights, such as the right to not be arrested without probable cause, no matter how clearly established that general right might be.

Crampton has not met his burden to establish that the constitutional right at issue was clearly established at the time of the violation. The Officers contend that it was not clearly established that they could not arrest Crampton for battery. Mot. Summ. J. 16. Crampton does not even attempt to provide a closely analogous case. *See generally* Resp. Mot. Summ. J. And because Crampton indisputably hit Dusenberry with the truck door, *see* Aff. Crampton 2; Police

Report 3, and a police officer may arrest an individual who has committed "even a very minor criminal offense in his presence," *Jackson v. Parker*, 627 F.3d 634, 639 (7th Cir. 2010) (quotation marks omitted), Crampton has not met his burden to show that arresting him for battery would be so egregious that no reasonable officer could have thought he was acting lawfully.  It is immaterial that Crampton was not arrested for or charged with battery, *see* Crim. Compl., Mot. Summ. J. Ex. 9, ECF No. 20-9 (bringing charges of "resisting a peace officer"), since "an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Abbott*, 705 F.3d at 715.

From the point Dusenberry was hit with the truck door, it was not clearly established that arresting Crampton for battery would violate the Constitution, so the Officers are protected by qualified immunity.  Even crediting Crampton's statement of the facts, all challenged actions occurred after Dusenberry was struck with the door.  *See* Aff. Crampton 2 (stating that the door "came into contact with . . . Dusenberry" before the Officers pulled Crampton from the truck); *see also* Police Report 3 (stating that the door hit Dusenberry before the Officers asked Crampton to step out of the vehicle).  Because the Officers are entitled to qualified immunity even under a probable cause standard, regardless of whether the Officers' decision to remove Crampton from the truck was an arrest or a continuation of the investigatory stop, Crampton cannot prevail.  The Court therefore need not decide precisely at what point the circumstances "constitute[d] a restraint on freedom of movement of the degree which the law associates with a formal arrest." *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999) (quotation marks omitted).  The Officers' motion for summary judgment is GRANTED with respect to Crampton's false arrest claim.

### b. Excessive Force

Apart from whether his arrest was justified, Crampton claims that "defendants Dusenberry and Little used excessive force in physically removing [him] from the truck and handcuffing him in violation of his Fourth Amendment rights." Compl. 3. Crampton claims that, after he told the Officers that he had bad shoulders and asked to be handcuffed in front of his body, "Dusenberry and Little forcibly pressed John Crampton against the side of the truck[,] grabbed his arms, pulled them in back of him and raised them up, handcuffing him and causing John Crampton to cry out in pain." Resp. Mot. Summ. J. 8; *see also* Aff. Crampton 2–3. He also seeks to hold Wiley liable for his inaction. *Id.* at 9.

The Officers seek summary judgment on grounds that they only used reasonable force in arresting Crampton, especially in light of the safety concerns and active resistance they faced. Mot. Summ. J. 21–25. The Officers again maintain that, in any event, they are entitled to qualified immunity. *Id.* at 30–31. Finally, the Officers argue that Crampton cannot establish a causal connection between the alleged excessive force and his injuries. *Id.* at 25–27.

### i. Constitutional Violation

Excessive force claims are analyzed under the reasonableness requirement of the Fourth Amendment. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). Under this test, "[a] police officer's use of force is unconstitutional if, judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Id.* (quotation marks omitted). Properly applying this test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is

10

actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  This is an objective test determined "from the perspective of a reasonable officer on the scene." *Id.*

In this case, summary judgment is inappropriate because the resolution of Crampton's excessive force claim hinges on which account of the arrest is credited by the finder of fact.  The Officers argue that the force used when removing Crampton from the truck was reasonable because he was ignoring orders, yelling profanities, and actively resisting their attempts to remove him from the truck.  *See* Mot. Summ. J. 22–24; Aff. Little 3; Aff. Dusenberry 3; Aff. Wiley 2–3.  They further maintain that the force used when handcuffing Crampton was reasonable given his resistance, and they aver that he never informed them of an injury or complained about the handcuffs.  Mot. Summ. J. 24–25; Aff. Little 3–4; Aff. Dusenberry 3–4; Aff. Wiley 3.  Crampton, on the other hand, insists that he did not hear any instructions to leave the truck, did not curse at the Officers, and did not otherwise resist the Officers or present as a threat.  *See* Resp. Mot. Summ. J. 6, 8; Aff. Crampton 2–3; Aff. Garland 2–3; Aff. Scott 2–3. Further, Crampton states that he put the Officers on notice of his bad shoulders, asked to be handcuffed in front, and "yelled out in pain" when he was handcuffed and his arms were yanked up behind his back.  Resp. Mot. Summ. J. 8–9; Aff. Crampton 3; Aff. Garland 3; Aff. Scott 2. Based on the evidence presented, a reasonable jury could believe either account.

Crediting Crampton's account of the events, as the Court must for purposes of summary judgment, the Officers' actions could constitute an unconstitutionally excessive use of force. Police officers may not knowingly use handcuffs "in a way that would inflict unnecessary pain or injury, if [the arrestee] presents little or no risk of flight or threat of injury." *Rooni v. Biser*, 742 F.3d 737, 742 (7th Cir. 2014); *see also Payne*, 337 F.3d at 780 ("[I]t [is] unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting

11

arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officers or others, and were suspected of committing only minor crimes."). Further, when an individual being arrested informs police officers of a preexisting injury or medical condition that would be aggravated by handcuffing, the officers are "obligated to consider that information, together with the other relevant circumstances, in determining whether it [is] appropriate to handcuff [him]." *Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009). In this case, Crampton claims he presented no risk of flight, offered no resistance to the Officers, and posed no threat to officer safety. Nevertheless, when Little and Dusenberry placed Crampton in handcuffs, they ignored a request based on a preexisting injury to be handcuffed in front and proceed to yank his arms.

Because Crampton's right to be free from such excessive force was well-established by the time of Crampton's arrest, Little and Dusenberry are not entitled to qualified immunity. *See Payne*, 337 F.3d at 780 (decided in 2003); *Rooni*, 742 F.3d at 742 (decided in 2014); *Stainback*, 569 F.3d at 773 (decided in 2009). The cases establishing Crampton's right are sufficiently analogous due to the compliance of the arrestee, the lack of threat to the officers under the circumstances, and the officers' knowledge of the arrestee's preexisting injuries. *See Payne*, 337 F.3d at 779 (describing relevant factual considerations and collecting cases); *Stainback*, 569 F.3d at 772 & n.6 (discussing the relevance of an officer's knowledge of an arrestee's medical problems). Little and Dusenberry cannot defeat this conclusion by arguing that Crampton disobeyed an order to exit the vehicle, resisted arrest, or posed a threat to their safety because he had a concealed carry permit. *See* Mot. Summ. J. 23. While, unlike the arrestees in *Payne*, *Rooni*, and *Stainback*, Crampton had a concealed carry permit, that fact alone does not distinguish the events here when, viewing the events in the light most favorable to Crampton, he

12

was not resisting arrest and had not disobeyed an order to exit the vehicle.  *See* Aff. Crampton 2–3 (stating that the Officers did not instruct Crampton to exit the vehicle and that Crampton never resisted the Officers); Aff. Garland 2–3 (similar); Aff. Scott 2–3 (similar).  In sum, the facts are sufficiently analogous to conclude that Crampton's right to be free of arrest in a manner that knowingly inflicted pain on a cooperative and compliant individual was clearly established.

Wiley is also not entitled to qualified immunity.  At the time of the arrest, it was clearly established that liability under section 1983 could extend to "[a]n officer who is present at the scene and who fail[ed] to take reasonable steps to protect the victim of another officer's use of excessive force."  *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994) (quotation marks omitted).  To be sure, an officer's failure to intervene does not violate an arrestee's constitutional rights if the officer "has no realistic opportunity to prevent an attack."  *Id.* (quotation marks omitted); *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990).  "A 'realistic opportunity' means a chance to warn the officer using excessive force to stop."  *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014).  In this case, Wiley was indisputably present at the scene and did nothing to protect Crampton from Little and Dusenberry's actions.  *See* Aff. Wiley 2–3; Aff. Crampton 3.  Viewing the facts in the light most favorable to Crampton a jury could reasonably conclude that Wiley did have an opportunity to intervene since he was present with Little and Dusenberry at the truck, observed several allegedly unconstitutional actions in a row that he failed to prevent, and drove Crampton to the Colona Police Department without alleviating the pain caused by the handcuffs.  *See* Aff. Wiley 2–3; Aff. Crampton 3.  Wiley's opportunity was much greater than in *Boggs*, where the Seventh Circuit concluded that an officer did not have an opportunity to intervene because he was still in his squad car when another officer tackled and cuffed the arrestee, *Boggs*, 33 F.3d at 857, and *Gaudreault*, where the First

13

Circuit found that a police officer did not have a realistic opportunity to prevent an attack that "was over in a matter of seconds," *Gaudreault*, 923 F.2d at 207 n.3. A jury could conclude that these facts are more analogous to those in *Kirkwood v. DeLong*, 683 F. Supp. 2d 823 (N.D. Ind. 2010). In that case, there was evidence that "the use of force . . . involved three separate blows—a tackle, an arm bar, and a knee to the back. The officers were standing ten feet away or less. The altercation . . . may have lasted for twenty seconds." *Id.* at 830. Given these facts, the court held that "a jury could reasonably find that . . . the officers could have stopped the force from being used." *Id.* Similarly here, the use of force involved several distinct actions that took place near Wiley and, given the nature of the events, may have lasted for at least twenty seconds. At the very least, given the unresolved issues of fact, it is for the jury to resolve whether Wiley had time to intervene. *See Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*." (quotation marks omitted)).

Because, taking the facts in the light most favorable to Crampton, the Officers are not entitled to qualified immunity, the Court DENIES the Officers' motion for summary judgment on Crampton's excessive force claim.

### ii. Causation

Crampton claims that the Officers' actions caused injuries to his wrists, elbows, and shoulders, and that he has sustained damages in the form of medical expenses, pain and suffering, and loss of normal life as a result. Compl. 3–4. The Officers argue that it is inappropriate to consider any evidence of Crampton's injuries because the evidence he presents

is not sufficient to establish causation.   Mot. Summ. J. 25–27; Reply Supp. Mot. Summ. J. 12–13, ECF No. 22.

As the Officers acknowledge in their reply, "injury is not an element of an excessive-force claim." *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010); Reply Supp. Mot. Summ. J. 12.  This is because, unlike in a tort case, where a physical injury is generally necessary to recover, the actionable injury in a constitutional claim under section 1983 is the violation of a constitutional right itself.  *See Taylor v. City of Milford*, 10 F.4th 800, 812 (7th Cir. 2021) ("Section 1983 requires the plaintiff to show that [the defendant] caused the deprivation of [the plaintiff's] constitutional rights." (quotation marks and alteration omitted)).  Because the Officers' use of force could have been excessive even if it did not cause physical injury, the strength of Crampton's causation evidence is not grounds for summary judgment.  *See McAllister*, 615 F.3d at 882 (holding that a plaintiff's injury may be evidence of the degree and reasonableness of force used but is not necessary to establish a constitutional violation); *see also Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007) ("A factfinder might conclude that [the plaintiff's] injuries were slight but nonetheless find that [the officer] employed more force than was justified.").

The Court further notes that evidence of Crampton's injuries is relevant even without expert medical testimony.  Of course, if Crampton "had no evidence that his injuries were caused by [the Officers], they would be irrelevant." *McAllister*, 615 F.3d at 882.  However, "so long as there is some evidence connecting those injuries to the force used by [the Officers], the evidence is relevant and the jury may draw reasonable inferences from the evidence presented." *Id.*  The Officers essentially argue that any evidence Crampton presents with respect to causation would be irrelevant because he does not provide expert medical testimony.  *See* Mot. Summ. J. 25–27;

15

Reply Supp. Mot. Summ. J. 12–13.  It is true that, "when there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010).  However, expert testimony is not required when a typical layperson "possess[es] the requisite knowledge to draw a causative line." *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 702 (7th Cir. 2015).

In this case, a typical juror would be capable of drawing a causative line without the assistance of a technical expert.  Crampton presents evidence that the Officers violently pulled him out of the truck, slammed him against the side of the vehicle, handcuffed him behind his back, and then yanked his arms upward.  *See* Aff. Crampton 2–3; Aff. Garland 2–3; Aff. Scott 2. Three days later, Crampton visited a doctor with a sling on his arm complaining of pain in both elbows and numbness in his fingers.  *See* Med. Records 2, Resp. Mot. Summ. J. Ex. F, ECF No. 21-6.  The doctors noted tenderness, pain, and reduced range of motion and placed Crampton's right wrist in a cast for four to six weeks.  *Id.* at 3.  Apart from any self-assessment by Crampton as to the cause of his injuries, "the close temporal proximity" between his first doctor's visit and his encounter with the Officers suggests a causal connection.  *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 865 (7th Cir. 2010).  This is in addition to Crampton's testimony about his subjective symptoms before and after the incident.  *See* Aff. Crampton 4 (claiming that he has had pain in his arms, wrists, elbows and shoulders "[s]ince June 21, 2023"); *McAllister*, 615 F.3d at 882 (considering a plaintiff's admissible testimony that "he was not in pain before he was taken to the ground, but afterward he was unable to walk").  On the whole, if a jury were to credit Crampton's version of the events, the nature of Crampton's injuries suggests that an average juror would be capable of drawing a causal connection between his treatment by the Officers and subsequent pain in his wrists, elbows, and shoulders.

16

Expert testimony is only required in cases where the causal connection is less obvious.  In *Myers*, the plaintiff alleged that years of work in a physically demanding position caused cumulative trauma injuries to his knee, elbow, back, and neck.  *Myers*, 629 F.3d at 641.  The Seventh Circuit held that expert testimony was necessary to establish causation because "neither Myers nor his physicians could point to a specific injury or moment that brought on the problems with his knee, elbow, and back and neck."  *Id.* at 643.  Most laypeople would not be able to discern the cause of his injuries because they were wide-ranging and gradual in nature and because the alleged cause was cumulative instead of discrete.  *Id.*  Unlike in *Myers*, Crampton's alleged arm, wrist, elbow, and shoulder injuries are distinct and localized, and the alleged cause is a discrete instance of excessive force.  In *Higgins*, the court required expert testimony because the alleged injuries were "not symptoms, but permanent, chronic conditions."  *Higgins*, 794 F.3d at 703.  There, a jury could not find causation without expert testimony because "a typical layperson does not possess the requisite knowledge to draw a causative line, without the assistance of a medical expert, between a brief encounter with chlorine gas and the onset of either RADS (a disease with which, we are confident, most lay people have no familiarity) or asthma."  *Id.* at 702.  Unlike the plaintiff in *Higgins*, Crampton complains of symptoms, not permanent, chronic conditions, and he does not allege the existence of a relatively obscure disease.  Crampton's claims are more analogous to cases in which the causal connection was more intuitive and expert testimony was not required.  *See, e.g.*, *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 88 (2d Cir. 2006) (holding that no expert testimony was required in the case of hearing loss from a railroad failing to provide a worker with ear protection).  Because the nature of Crampton's injuries is comprehensible to a layperson, the alleged cause is discrete, and the

link between the two is relatively intuitive, expert testimony is not necessary for a jury to find a causal connection.

The Officers do raise important questions about the persuasiveness of Crampton's causation evidence. *See* Mot. Summ. J. 25–27. Crampton already had bad shoulders, *see* Aff. Crampton 3, and he had fallen earlier that night in the bar, *id.* at 1. However, it is for the jury to decide whether to credit Crampton's evidence. Regardless, the lack of expert testimony does not make Crampton's evidence irrelevant. *See McAllister*, 615 F.3d at 882 ("[W]e have never held that a plaintiff bears any burden (beyond relevance) before that plaintiff's injuries may be considered in an excessive-force case."). In any case, because injury is not an essential element of the claim, the Court must DENY the Officers' motion for summary judgment on the issue of excessive force.

## CONCLUSION

Accordingly, Defendants Samuel Little, Tom Wiley, and Eric Dusenberry's motion for summary judgment, ECF No. 20, is GRANTED IN PART and DENIED IN PART. Defendants are entitled to qualified immunity with respect to Plaintiff John Crampton, III's claim that he was arrested without probable cause. However, Plaintiff's claim for excessive force survives summary judgment because material facts remain in dispute.

Entered this 21st day of April, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
